UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RL LIQUIDATORS LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 2:24-cv-02096-JHC<br><br>~~SEALED~~ ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

# I
## INTRODUCTION

This matter comes before the Court on Defendant Amazon.com Services, LLC's Motion to Dismiss. Dkt. # 15. The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law. Being fully advised, and for the reasons below, the Court GRANTS in part and DENIES in part the motion. And the Court grants RL leave to amend its complaint.

## II
### Background

The Court takes as true the facts alleged in the complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff RL Liquidators, LLC, based in California, is one of the largest liquidation companies in the Western United States.  Dkt. # 13 at 3, ¶ 10.  It purchases and transports unsold inventory from large retailers.  *Id.*  On July 6, 2021, RL entered an agreement (effective June 28, 2021) with Amazon, one of the largest retailers in the world, to purchase liquidation merchandise.  *Id.* at 2, 3–4, ¶¶ 6, 11.  On November 8, 2022, the parties entered another agreement (the Agreement) (effective September 15, 2022), Dkt. # 16 (Exhibit A), that superseded the prior one.[1]

As detailed further below, RL alleges that Amazon breached the Agreement by "routinely send[ing] RL fraudulent and misleading invoices for loads that RL did not take, items that Amazon did not place on RL's trucks, and inflat[ing] prices for Liquidation Merchandise that did not represent Amazon's true cost of goods sold."  Dkt. # 13 at 5, ¶ 16.  On May 6, 2024, Amazon terminated the Agreement and demanded payment of invoices related to liquidation merchandise.  *Id.* at 12, ¶ 46.  RL estimates that it has incurred millions of dollars in overcharges due to issues with the invoices.  *Id.* at 12, ¶ 47.

---

[1] RL bases its complaint on the prior July 6, 2021 agreement, but the parties do not dispute that they entered into the later Agreement.  *See* Dkt. ## 15 at 9 & n.3; 19 at 4–5.  Although RL did not attach the Agreement to its complaint, Amazon filed a redacted version of the Agreement and the related Doing Business with Amazon Liquidations Guide with its motion to dismiss.  Dkt. # 16.  RL asks the Court to consider these documents.  Dkt. # 19 at 5 n.1.  The Court considers these documents because the parties rely on them and because they are incorporated into the complaint by reference.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (a court may consider documents even when a complaint does not refer to them because the claim "necessarily depend[s] on them").  The Court, however, stresses the importance of proper pleading and directs RL to refer to the proper contract in an amended complaint, if it chooses to file one.

~~SEALED~~ ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO DISMISS - 2

1       RL brings four claims: (1) breach of contract; (2) breach of implied duty of good faith

2   and fair dealing; (3) violation of the Washington Consumer Protection Act (WCPA), RCW 19.86

3   *et seq.*; and (4) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code

4   § 17200 *et seq.*  Amazon moves to dismiss for failure to state a claim.  Dkt. # 15.

## III
### DISCUSSION

6       In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

7   Court takes all well-pleaded factual allegations as true and determines whether the complaint

8   "state[s] a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*

9   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff

10  pleads factual content that allows the court to draw the reasonable inference that the defendant is

11  liable for the misconduct alleged."  *Id.*  Although the Court draws all reasonable inferences in

12  favor of RL, the Court is not "required to accept as true allegations that are merely conclusory,

13  unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*,

14  266 F.3d 979, 988 (9th Cir. 2001).  The Court may grant leave to amend a dismissed claim when

15  it is possible that the claim can be cured with additional factual allegations.  *Ebner v. Fresh, Inc.*,

16  838 F.3d 958, 963 (9th Cir. 2016).

17  A.      Breach of Contract

18      RL brings a breach of contract claim as to several invoices that it disputed through the

19  Agreement's dispute process.  The Court concludes that RL states a claim as to only one of these

20  disputed invoices.

21      "In a breach of contract action, the plaintiff must prove that a valid agreement existed

22  between the parties, the agreement was breached, and the plaintiff was damaged."  *Univ. of*

23  *Washington v. Gov't Emps. Ins. Co.*, 404 P.3d 559, 566 (Wash. Ct. App. 2017).  RL asserts that

24

1    Amazon breached the Agreement by charging inflated prices and refusing to compensate it for

2    overcharges.[2]

3        1.    Inflated prices

4        RL contends that Amazon charged inflated prices for liquidation merchandise.  RL

5    alleges that Amazon charged "more than the price established by the Agreement based on the

6    cost of goods sold and, in some cases, more than *retail* pricing for Liquidation Merchandise."

7    Dkt. # 13 at 11, ¶ 35.  Amazon counters that RL waived such claims.

8        First, Amazon relies on Section 10 of the Agreement:

9        ALL LIQUIDATION MERCHANDISE IS CONVEYED TO LIQUIDATOR "AS
         IS, WHERE IS" WITH ALL FAULTS AND DEFECTS WITHOUT ANY
10       WARRANTY, EXPRESS OR IMPLIED, CONCERNING THE LIQUIDATION
         MERCHANDISE OR ITS FITNESS FOR A PARTICULAR PURPOSE OR
11       MERCHANTABILITY. ALL SALES ARE FINAL AND NO SELLER OF
         LIQUIDATION MERCHANDISE WILL BE LIABLE FOR ANY CLAIM, LOSS,
12       DAMAGE, LIABILITY OR EXPENSE OF ANY KIND CAUSED DIRECTLY
         OR INDIRECTLY BY ANY LIQUIDATION MERCHANDISE, AND
13       LIQUIDATOR HEREBY RELEASES EACH SELLER OF LIQUIDATION
         MERCHANDISE FROM ANY AND ALL SUCH CLAIMS.
14
     Dkt. # 16 at 11.  Amazon characterizes this section as a broad waiver of claims related to the sale
15
     of liquidation merchandise.  But the section limits the release of "any and all such claims" to
16
     those "caused directly or indirectly by any liquidation merchandise."  Liquidation merchandise
17
     cannot give rise to pricing claims; it is Amazon, not the liquidation merchandise, that sets prices.
18
     And when read in context, the release pertains to claims based on "faults and defects" of the
19
     liquidation merchandise that is sold "as is."  *See Warner v. Design & Build Homes, Inc.*, 114
20
     P.3d 664, 668 (Wash. Ct. App. 2005) (an "as is" clause is a "warranty disclaimer").  Amazon
21

22   _____
         [2] RL bases its breach of contract claim on allegations that Amazon (1) charged inflated prices;
23   (2) sent invoices for items that RL did not receive; and (3) refused to compensate RL for disputed
     invoices that were resolved (or should have resolved) in RL's favor.  Dkt. # 13 at 13, ¶ 51.  But in its
24   response brief, RL asserts only that Amazon breached the Agreement by charging inflated prices and
     refusing to compensate it for overcharges.  Thus, the Court addresses only these assertions.

~~SEALED~~ ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO DISMISS - 4

says that a sale of "as is, where is" merchandise "plainly encompasses pricing," but cites no

authority to support this proposition.[3]  Dkt. # 21 at 7.  Amazon also cites *City of Everett v.*

*Sumstad's Est.*, 631 P.2d 366, 368 (Wash. 1981), to contend that the "ALL SALES ARE

FINAL" provision might waive pricing claims.  But it is unclear how this case, which involved

the sale of a safe containing unknown contents, applies.  *Id.*

 Second, Amazon contends that RL waived pricing claims because it agreed to use a

dispute process.  Section 2.1 of the Agreement provides, "The sales price for the Liquidation

Merchandise will be . . . a percentage of Amazon's cost of goods sold ('**COGS**') with respect to

the Liquidation Merchandise as specified and agreed by the parties in the applicable Rate

Schedule."  Dkt. # 16 at 7.  Section 2.4 of the Agreement provides for a dispute process:

> If Liquidator disputes any invoice or Inventory Listing, then within thirty (30) days
> of the date the Inventory Listing was provided or the invoice date (regardless of the
> payment terms), as applicable, Liquidator must submit the dispute details as
> outlined in the Doing Business with Amazon Liquidations Guide.

*Id.*

 RL does not deny that this section waives pricing claims raised outside the dispute

process.  RL says, however, that such waiver would be "invalid as a prospective waiver."  Dkt.

# 19 at 13.  But *In re Est. of Howisey*, 2011 WL 2639324 (Wash. Ct. App. 2011), the authority

that RL relies on, is not on point.  There, the court held that a broad release of "all liability

related to" a settlement agreement was invalid because "[i]nterpreting the release to bar an action

to enforce the Agreement makes the Agreement a nullity."  *Id.* at *2 & n.2, 4.  Granted,

interpreting a contract to waive a claim for breach of that contract could be problematic because

---

[3] Amazon cites cases for the general proposition that courts enforce releases of claims but does
not explain how the relevant provisions in those cases are analogous to Section 10 of the Agreement.

~~SEALED~~ ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO DISMISS - 5

it would make the contract unenforceable.  But here, the Agreement is enforceable as to pricing issues because RL can raise disputes through the Agreement's dispute process.

Thus, RL cannot base its breach of contract claim on pricing issues that were not raised in the dispute process.

### 2.     Compensation for overcharges

RL can, however, base its breach of contract claim on Amazon's failure to abide by the dispute process.  Section 2.4 of the Agreement provides:

> For the avoidance of doubt, if Liquidator disputes an invoice, Liquidator must pay the entire amount of any invoice in dispute within the Days Payable and, should the dispute be resolved in Liquidator's favor, Amazon shall either, at its discretion: (x) refund the amount properly payable to Liquidator, or (y) credit the amount properly payable to Liquidator on future or outstanding amounts due to Amazon.

Dkt. # 16 at 7.  RL contends that despite its compliance with the dispute process and resolution of disputed invoices in its favor, Amazon refused to compensate it.

As an initial matter, the complaint does not specifically allege the disputes resolved in RL's favor or the uncompensated amount at issue.  RL alleges that it submitted at least "34 disputes" in "a series of disputes for invoices related to Liquidation Merchandise," and that, according to an Amazon representative, many were "in the process of being approved."  Dkt. # 13 at 5, 7, ¶¶ 17, 21–22.  Because it is unclear from these allegations which disputed invoices were resolved in RL's favor, RL does not adequately allege breach.[4]

Thus, the Court dismisses without prejudice RL's breach of contract claim as to these generalized disputed invoices.

Amazon, however, acknowledges that RL alleges with more specificity one disputed invoice and a set of disputed invoices that were resolved in RL's favor.

---

[4] For this reason, the Court does not address RL's assertions that Amazon waived strict compliance with the technical requirements of the dispute process.

~~SEALED~~ ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO DISMISS - 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

          a.      January 2021 invoice

RL alleges that it disputed an invoice from January 2021 and that it did not receive an Amazon-approved credit for $21,060.02.  *Id.* at 12, ¶ 44.  Amazon asserts that this is not a plausible basis for breach of contract because RL "has not attempted to resolve this issue with Amazon, perhaps because Plaintiff owes Amazon millions of dollars in unpaid invoices, that would form the basis of a set off."  Dkt. # 21 at 10 n.6.  The Court, however, declines to speculate outside the allegations in the complaint.

Amazon also asserts that RL's allegation about this credit is insufficient because RL does not separately allege that it met two requirements to be entitled to the credit: (1) that the disputed invoice exceeds the three percent de minimis threshold; and (2) that RL paid the amount in the disputed invoice.  This assertion is unpersuasive.  As to the first requirement, Section 2.4 of the Agreement provides, "In the event that the amount of any such dispute is less than the greater of (a) three percent (3%) of the applicable invoice or (b) one thousand USD ($1,000.00), the parties agree that such amount is de minimis and will not be the basis for a dispute."  Dkt. # 16 at 7. That Amazon approved the credit supports a reasonable inference that the amount at issue was not de minimis.

As to the second requirement, Amazon asserts that even if it approves a credit, it is not owed until RL "pay[s] the entire amount of any invoice in dispute within the Days Payable."  *Id.* But Amazon does not explain how the language of the Agreement supports its assertion.  Section 2.4 of the Agreement (reproduced above) suggests that paying the entire amount of an invoice is required to dispute it; however—and this is a close call—it does not appear to suggest that payment is required to receive a refund or credit from Amazon.  Furthermore, Amazon's interpretation appears to conflict with its guide for disputes, which provides, "If a dispute is still pending on the due date the full invoice amount less the disputed amount request must be paid."

SEALED ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO DISMISS - 7

1    *Id.* at 36.  And RL alleges that it paid its invoices "less the disputed amounts."  Dkt. # 13 at 8,

2    ¶ 23.  And in any event, as with the first requirement, the Court can reasonably infer from RL's

3    allegation that Amazon approved the credit that RL met the criteria required to receive it.

4            Thus, RL states a breach of contract claim as to the January 2021 invoice.

5                    b.    6.35% credit for FBA invoices

6            RL alleges that Amazon, through a December 2022 email sent by Humberto De La

7    Garza, an Amazon representative, agreed to provide a 6.35% credit to RL on Fulfillment by

8    Amazon (FBA)[5] invoices.  Dkt. # 13 at 10, ¶ 32.  But Amazon did not apply the 6.35% credit to

9    disputed FBA invoices.  *Id.* at 10, ¶ 33.  And in a November 20, 2023 email, another Amazon

10   representative explained, "As discussed and aligned during our call today, we shall not process a

11   flat 6.35% credit for FBA disputes for Jan-Jun '23 as previously communicated by Humberto,

12   instead we shall process the disputes on the actuals for all of these invoices."  *Id.* at 10, ¶ 34.

13           Even if these email exchanges support a valid modification of the Agreement, RL does

14   not adequately allege the modification's scope or terms.  RL alleges that it "re-submitted all FBA

15   invoices from August 2022 through December 2022, along with disputes at or near 6.35% of the

16   amounts owed on each invoice."  *Id.* at 10, ¶ 32.  But the timeframe to which the modification

17   would apply is unclear because the November 20, 2023 email suggests that the modification

18   would also apply to subsequently disputed FBA invoices.  It is also unclear why RL re-submitted

19   FBA invoices "with disputes at or near 6.35% of the amounts owed on each invoice" when the

20   November 20, 2023 email discusses "a flat 6.35% credit for FBA disputes."

21

22

23

24           ───────────────

             [5] The FBA Program is explained below in Section III.C.1.

1

2

3

Thus, the Court dismisses without prejudice RL's breach of contract claim to the extent that it is based on a modification of the Agreement for Amazon to provide a 6.35% credit to RL for disputed FBA invoices.

B.      Breach of Implied Duty of Good Faith and Fair Dealing

4

5

6

7

8

9

10

11

12

RL does not adequately allege breach of implied duty of good faith and fair dealing. "There is in every contract an implied duty of good faith and fair dealing. This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991).  This duty does not change the terms of a contract; "[r]ather, it requires only that the parties perform in good faith the obligations imposed by their agreement."  *Id.*  RL contends that Amazon breached this duty by failing to accurately fix the cost of goods sold and by including hazardous and illegal materials in liquidation merchandise loads.[6]

13

1.      Cost of goods sold

14

15

16

17

18

19

RL asserts that Amazon breached its duty of good faith and fair dealing because it inflated prices by using an algorithm to estimate the cost of goods sold.  But as discussed above in Section III.A.1, RL agreed to raise claims based on pricing issues through the dispute process, which allows RL to address an "[o]vercharge for an item due to a data error."  Dkt. # 16 at 36. And RL does not point to allegations about Amazon's refusal to correct specific invoices it disputed because of algorithmic pricing errors.

20

21

22

23

24

---

[6] In its complaint, RL bases its breach of implied duty of good faith and fair dealing claim on allegations that Amazon (1) failed to exercise due care by charging inflated prices; (2) sent RL false and misleading invoices for items that it did not receive; and (3) disregarded compensation for disputed invoices that Amazon resolved (or should have resolved) in RL's favor.  Dkt. # 13 at 13, ¶ 56.  But in its response brief, RL asserts only that Amazon breached its implied duty of good faith and fair dealing by failing to accurately fix the cost of goods sold and by including hazardous and illegal materials in liquidation merchandise loads.  Thus, the Court only addresses these assertions.

1

2     **2.     Hazardous and illegal materials**

RL also asserts that Amazon breached its duty of good faith and fair dealing by

3     distributing hazardous waste and illegal materials. ████████████████████████████

4     ████████████████████████████████████████████████████████████████████

5     ████████████████████████████████████████████████████████████████

6     ████████████████████████████████████████████████████████████

7     ███████████████████████████████████████████████████████, and

8     that it "had no opportunity to review the contents of loads collected from Amazon prior to

9     accepting them." Dkt. # 13 at 11–12, ¶ 40.

10    Amazon counters that Section 4(d) of the Agreement allocates responsibility for the

11    disposal of hazardous waste to RL:

12        Liquidator understands that the Liquidation Merchandise may be regulated as
          hazardous materials by federal, state, and local agencies, and Liquidator will
13        comply with all such regulations and restrictions and obtain and maintain all [*sic*]
          necessary licenses and permits for the performance of its obligations hereunder,
14        including, without limitation, packaging, labeling, documentation, ship method
          constraints, storage, removal, destruction, recycle and disposal of hazardous
15        materials.

16    Dkt. # 16 at 8–9.

17    RL suggests that the Agreement implies that Amazon will minimize the inclusion of such

18    materials but does not support this suggestion with specific language in the Agreement or

19    relevant legal authority. RL also points out that an accepted dispute reason under the dispute

20    process (discussed above in Section III.A.1) is when "[l]oads meant for other dispositions (E.g.

21    Disposal) [are] incorrectly routed to liquidation." Dkt. # 16 at 36. Because "[g]ood faith *limits*

22    the authority of a party retaining discretion to interpret contract terms," Amazon might breach its

23    duty of good faith and fair dealing by unfairly adjudicating disputes raised in the dispute process.

24    *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) (quoting

~~SEALED~~ ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO DISMISS - 10

*Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001)). But RL neither alleges that it disputed specific invoices based on issues with hazardous waste nor explains how Amazon unfairly interpreted the Agreement in adjudicating such disputes.

Thus, the Court dismisses without prejudice the breach of implied duty of good faith and fair dealing claim.

C.    Washington Consumer Protection Act

RL does not state a WCPA claim. The WCPA requires a plaintiff to establish five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Amazon raises issues only as to the first and third elements. To establish an "unfair or deceptive act or practice," a plaintiff need not show that an action is both unfair and deceptive because the "'or' between 'unfair' and 'deceptive' is disjunctive." *Klem v. Washington Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

1.    Unfair practice

RL does not plausibly allege an unfair practice. The Supreme Court of Washington has used the "substantial injury" test from the FTC Act of 1914, 15 U.S.C. § 45(n), to determine that an act or practice is "unfair" when it meets three criteria: (1) the act or practice causes or is likely to cause substantial injury to consumers; (2) which is not reasonably avoidable by consumers themselves; and (3) not outweighed by countervailing benefits to consumers or to competition. *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 640–41 (Wash. 2024).

The second element is dispositive. "An injury is reasonably avoidable if consumers have reason to anticipate the impending harm and the means to avoid it, or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the

fact." *Id.* at 642 (cleaned up).  RL bases its WCPA claim on allegations that Amazon charged inflated prices, sent false invoices for unreceived merchandise, refused compensation for invoice disputes that were resolved in RL's favor, loaded RL's trucks with hazardous waste and illegal materials, and deployed a burdensome and costly dispute system.  Dkt. # 13 at 14, ¶ 60.  RL cannot support its WCPA claim with allegations about disputes as to pricing and distribution of hazardous waste and illegal materials because the Agreement provided notice of these potential harms and a dispute process through which RL could reasonably avoid them.

RL might not, however, have had notice of broader issues that affect the efficacy of the dispute process.  And it does not appear that RL could use the dispute process to resolve problems with the dispute process itself.  But RL's allegations and the parties' briefing on these issues are unclear.  RL alleges that Amazon deploys "a burdensome and costly dispute system intended to discourage RL and other liquidators from submitting valid invoice disputes." *Id.* This allegation relies on other allegations about Amazon's FBA Program.

Under the FBA Program, third party sellers can sell their products on Amazon's website. *Id.* at 2–3, ¶ 7.  The FBA Program allows third party sellers to send their products to Amazon, which will pack and ship the products to customers, provide customer service, and process returns. *Id.* ███████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████. For example, "FBA sellers have listed a waterproof cellular telephone pouch for over $1,000, clear cellular telephone cases at $100 each, and a 50-pack of KN95 masks for $97."  Dkt. # 13 at 3, ¶ 9.  When consumers do not buy products listed at such high prices, they are sold to liquidators like RL. *Id.*

RL alleges that Amazon charged prices for liquidation merchandise higher than those agreed to in the Agreement. *Id.* at 5, ¶ 16.  And because the Agreement provides that RL must

SEALED ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO DISMISS - 12

generally submit invoice disputes within 30 days, RL's employees spent significant time

attempting to identify pricing errors. Dkt. # 1 at 5–6, ¶ 18 (sealed). When Amazon began

requiring Amazon Standard Identification Numbers (unique numbers assigned to items on

Amazon's website) for each disputed item, RL at times "needed to audit up to and over 1 million

items per week for pricing accuracy in order to document its invoice disputes." Dkt. # 13 at 8,

¶ 25. RL conducted an internal audit that supported the prevalence of inflated prices.[7] At times,

Amazon charged not only more than a price based on the cost of goods sold, but also more than

the retail price. Dkt. # 13 at 11, ¶ 35. In a November 25, 2022 email to De La Garza, RL

explained that FBA sellers—who are not parties here—intentionally inflate prices "as a way to

defraud Amazon and get more money on liquidation than the item is truly worth." *Id.* at 9, ¶ 27.

RL alleges that Amazon was aware of these pricing issues. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████  On November 23, 2022, De La Garza sent RL another email in

which he said, "I agree with you that this is Amazon's problem and that we have a few bad

sellers taking advantage of the program and then we have some other [*sic*] that have a wrong cost

due to other reasons." Dkt. # 13 at 9, ¶ 26.

---

[7] RL's analyst "review[ed] a random sortable FBA manifest with a focus on items with a recovery
value of over $50 and telephone cases with a recovery value of over $20. The analyst reviewed less than
10,000 items, which represented under 1.5% of the total number of items on the manifest." Dkt. # 13 at
10, ¶ 29. "Over half of the audited items had inflated recovery values." *Id.* at 10, ¶ 30.

These allegations suggest that Amazon's widespread pricing issues forced RL to dispute numerous invoices. But RL does not explain how these allegations support a WCPA claim. It might be that RL could not have anticipated incurring excessive auditing costs because in early 2022, it "did not yet know the full extent of Amazon's fraudulent pricing and manifest issues." *Id.* at 5, ¶ 17. But it is unclear how the auditing costs were beyond the scope of the Agreement, which requires RL to invoke the dispute process. And because RL also alleges that "Amazon's truck manifest system made it nearly impossible to determine what items were loaded on which trucks," it is unclear to what extent auditing costs were incurred due to Amazon's pricing issues as opposed to other problems. *Id.* at 9, ¶ 28. Alternatively, it might be that Amazon's widespread pricing issues made it impossible for RL to dispute some invoices. But RL neither points to allegations about specific invoices that it was unable to dispute, nor explains how the Agreement did not anticipate the difficulty of auditing invoices for vast quantities of liquidation merchandise. Thus, RL does not adequately allege an unfair practice.

2.    Deceptive act

RL also does not sufficiently allege a deceptive practice. Although "the [WCPA] does not define the term 'deceptive,' the implicit understanding is that the actor misrepresented something of material importance." *Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 931 (W.D. Wash. 2024) (cleaned up). RL contends that the Agreement's provision that Amazon would charge RL "a percentage of Amazon's cost of goods sold," Dkt. # 16 at 7, was deceptive because it did not specify that Amazon would use an algorithm to estimate its cost of goods sold. RL appears to acknowledge that the provision is accurate but suggests that it is deceptive because it does not disclose the potential frequency or severity of pricing issues.

To be sure, "[e]ven a truthful statement can be deceptive if it creates a misleading 'net impression.'" *Eng v. Specialized Loan Servicing*, 500 P.3d 171, 178 (Wash. Ct. App. 2021). But

RL cites no authority to support its assertion that Amazon's failure to disclose the potential frequency or severity of pricing issues creates a misleading net impression.  Nor does RL meaningfully address the fact that the Agreement's provision for a dispute process anticipated pricing issues.  RL alleges that it failed to successfully dispute some invoices through the dispute process, but it is unclear why these issues would support a deceptive act.  Because the Court concludes that RL does not adequately allege an unfair or deceptive act or practice, it need not reach the remaining WCPA factors.[8]

Thus, the Court dismisses the WCPA claim without prejudice.

D.    California Unfair Competition Law Claim

RL does not state a UCL claim.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  ██████████████

████████████████████████████████████████████████

██████████████████████

Under the "unlawful" prong, "[v]iolation of almost any federal, state, or local law may serve as the basis for a UCL claim."  *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008).  But RL neither states a WCPA claim nor specifies other statutes to support its claim.  As for the "unfair" and "fraudulent" prongs, RL relies on factual allegations that are not set forth in the UCL section of its complaint.  Thus, Amazon did not have "fair notice" to "defend itself effectively" against these formulations of the UCL claim.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Olympic Tug & Barge, Inc. v. Lovel Briere LLC*,

---

[8] The Court takes no position on the merits of the parties' contentions about the public interest impact factor. But RL should consider Amazon's contentions in filing an amended complaint if it chooses to do so.

~~SEALED~~ ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO DISMISS - 15

668 F. Supp. 3d 1165, 1177 (W.D. Wash. 2023) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

Thus, the Court dismisses the UCL claim without prejudice.

## IV
### CONCLUSION

For these reasons, the Court GRANTS in part and DENIES in part Amazon's motion to dismiss.  The Court DENIES Amazon's motion to dismiss the breach of contract claim to the extent that it is based on the January 2021 invoice.  The Court GRANTS Amazon's motion to dismiss as to all other claims and dismisses these claims without prejudice.

The Court GRANTS RL leave until August 5, 2025 to file an amended complaint; such leave is limited to the claims dismissed here.  As to the breach of contract claim, such leave is limited to claims arising from disputes submitted under the dispute resolution provision of the Agreement.

~~The Court provisionally files this Order under seal.  The Court DIRECTS the parties to file a joint statement, on or before July 29, 2025, indicating what redactions, if any, should be included in the public version of the Order.~~

Dated this 15th day of July, 2025.

John H. Chun
United States District Judge

~~SEALED~~ ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO DISMISS - 16