UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RL LIQUIDATORS LLC, a California
limited liability company,

Plaintiff,

v.

AMAZON.COM SERVICES LLC, a
Delaware limited liability company,

Defendant.

CASE NO. 2:24-cv-02096-JHC

~~SEALED~~ ORDER

**I**

**INTRODUCTION**

This matter comes before the Court on Defendant Amazon.com Services, LLC's Motion to Dismiss Plaintiff's First Amended Complaint.  Dkt. # 40.  The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the governing law.  Being fully advised, for the reasons below, the Court GRANTS in part and DENIES in part the motion.

~~SEALED~~ ORDER- 1

## II

### BACKGROUND

The Court takes as true the facts alleged in the First Amended Complaint (FAC) (Dkt. # 39). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff RL Liquidators, LLC, based in California, is one of the largest liquidation companies in the Western United States. Dkt. # 45 ¶ 10. It purchases and transports unsold inventory from large retailers. *Id.* On July 6, 2021, RL entered an agreement (effective June 28, 2021) with Amazon, one of the largest retailers in the world, to buy liquidation merchandise. *Id.* ¶¶ 6, 11. On November 8, 2022, the parties entered another agreement (the Agreement), effective September 15, 2022, that superseded the prior one. *See* Dkt. # 45 at 27–37 (Exhibit A; redacted version); Dkt. 39-1 (filed under seal).[1] Section 2.4 of the Agreement references another document called "Doing Business with Amazon Liquidations" (the Guide), attached as Exhibit B to the FAC. *See* Dkt. # 45 at 39–60.[2]

As detailed further below, RL alleges that Amazon breached the Agreement by "routinely sen[ding] RL fraudulent and misleading invoices for loads that RL did not take, items that Amazon did not place on RL's trucks, and inflat[ing] prices for Liquidation Merchandise that did not represent Amazon's true cost of goods sold." Dkt. # 45 ¶ 17. RL also alleges that Amazon frequently loaded its trucks with hazardous waste and goods illegal to sell. Dkt. # 45 ¶¶ 56–57. On May 6, 2024, Amazon terminated the Agreement and demanded payment of invoices related to liquidation merchandise. *Id.* ¶ 61. RL estimates that it has incurred millions of dollars in overcharges based on issues with the invoices. *Id.* ¶ 63.

---

[1] The Court cites the public version, Dkt. # 45, unless it needs to cite the sealed version. Dkt. # 39.

[2] The public version of the FAC integrates all the exhibits into the main filing, meaning that the FAC and each exhibit appear under the same ECF header. The Court cites the FAC itself as "Dkt. # 45 ¶ [paragraph number]," and cites the exhibits as "Dkt. # 45, Ex. [letter] at [page number]."

SEALED ORDER- 2

In its initial complaint, RL brought four claims: (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing; (3) violation of the Washington Consumer Protection Act (WCPA), RCW 19.86 *et seq.*; and (4) violation of California's Unfair Competition Law (UCL), California Business and Professions Code § 17200 *et seq.* Amazon moved to dismiss that complaint for failure to state a claim. Dkt. # 15. In a July 15, 2025 order (the Order), the Court granted in part and denied in part the motion. Dkt. # 26. The Court concluded that RL had failed to state any of its claims (except for one part of its breach of contract claim, detailed below), and granted RL leave to amend its complaint. Dkt. # 34.

On August 12, 2025, RL filed the FAC. Dkt. # 39 (filed under seal); *see also* Dkt. # 45 (redacted public version). RL's FAC renews each of its four claims. Along with Exhibits A (the Agreement) and B (the Guide), the FAC also appends Exhibit C, a list of invoices titled "Disputes RL submitted to Amazon within 30-day dispute timeline," Dkt. # 45, Ex. C at 62–67, and Exhibit D, a list of invoices titled "Disputes RL submitted to Amazon after 30-day dispute timeline." Dkt. # 45, Ex. D at 69–73.

Amazon now moves to dismiss the FAC. Dkt. # 40.

### III
### DISCUSSION

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all well-pleaded factual allegations as true and determines whether the complaint "state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court draws all reasonable inferences in favor of RL, the Court is not "required to accept as true allegations that are merely conclusory,

SEALED ORDER- 3

unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court may grant leave to amend a dismissed claim if it could be cured with additional factual allegations. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016). But "the Ninth Circuit has recognized that plaintiffs do not enjoy unlimited opportunities to amend their complaints." *Stone v. Conrad Preby's*, 2013 WL 139939, at *2 (S.D. Cal. Jan. 10, 2013), *aff'd sub nom. Stone v. Sharp Mesa Vista Hosp.*, 584 F. App'x 645 (9th Cir. 2014) (citing *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir.1996)).

A.      Breach of Contract

RL renews its breach of contract claim for several invoices that it disputed through the Agreement's dispute process. It asserts that Amazon breached the Agreement by (1) charging inflated prices, (2) sending invoices for items that RL did not receive, and (3) refusing to compensate RL for overcharges on disputed invoices. *See* Dkt. # 45 ¶ 67. For the reasons below, the Court concludes that RL has stated a breach of contract claim for the disputed invoices under each of the three theories above.

        1.      Breach of contract standard and the Court's prior ruling

"To plead a breach of contract claim under Washington law, a plaintiff must allege 'that a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged.'" *Univ. Ins., LLC v. Allstate Ins. Co.*, 564 F. Supp. 3d 934, 938 (W.D. Wash. 2021) (citing *Univ. of Washington v. Gov't Emps. Ins. Co.*, 200 Wash. App. 455, 467, 404 P.3d 559 (2017)). Amazon does not dispute that the parties had a valid agreement.

In the Order, the Court concluded that RL had alleged breach of contract only on its first and third theories, since it dropped the second in its response brief. *See* Dkt. # 34 at 4 n.2. Then, the Court ruled that RL waived any claims on its inflated prices theory for invoices that it did not originally submit to the dispute resolution mechanism described in Section 2.4 of the parties'

SEALED ORDER- 4

Agreement.  *See id.* at 4–5; *see* Dkt. # 45, Ex. A at 29, § 2.4 (applicable Agreement section).[3] These claims were dismissed with prejudice.  *See* Dkt. # 34 at 16.  As to the third theory, the Court first concluded that RL could bring its disputed invoices compensation claim, since it flowed from Amazon's failure to abide by its own dispute process.  *Id.* at 6.  But the Court also ruled that RL had not provided enough detail on these disputed invoices, failing to state which disputes were resolved in RL's favor and the uncompensated amounts at issue.  *Id.*  Without this specificity, RL had not sufficiently alleged breach.  The Court did rule, however, that RL had sufficiently alleged breach with respect to an invoice dated from January 2021.  *Id.* at 7–8.

2.    Analysis

In its second motion to dismiss, Amazon makes two arguments as to why RL fails to state a breach of contract claim.  First, and with respect to each of RL's theories, Amazon contends that RL has not cured the deficiencies identified in the Order.  Amazon says that the prior ruling requires RL to allege, "for each invoice, (1) the invoice date, (2) the amount at issue, (3) the

---

[3] Section 2.4 of the Agreement states:
Disputes. If Liquidator disputes any invoice or Inventory Listing, then within thirty (30) days of the date the Inventory Listing was provided or the invoice date (regardless of the payment terms), as applicable, Liquidator must submit the dispute details as outlined in the Doing Business with Amazon Liquidations Guide. No dispute will be valid hereunder or be accepted or acknowledged beyond this thirty (30) day period, and Liquidator waives any right it may have to dispute any Inventory Listing or any amount on an Amazon invoice beyond this thirty (30) day period. Dispute Details must be submitted using the process specified by Amazon. In the event that the amount of any such dispute is less than the greater of (a) three percent (3%) of the applicable invoice or (b) one thousand USD ($1,000.00), the parties agree that such amount is de minimis and will not be the basis for a dispute.  For the avoidance of doubt, if Liquidator disputes an invoice, Liquidator must pay the entire amount of any invoice in dispute within the Days Payable and, should the dispute be resolved in Liquidator's favor, Amazon shall either, at its discretion: (x) refund the amount properly payable to Liquidator, or (y) credit the amount properly payable to Liquidator on future or outstanding amounts due to Amazon. Notwithstanding the existence of any Dispute, should Liquidator fail to pay the entire amount of an invoice within the Days Payable (i.e. short pay) Amazon may exercise any of its rights or remedies under this Agreement, including without limitation, drawing on the LC or Cash Deposit as provided in Sections 2.3 and 7."
Dkt. # 45, Ex. A at 29.

SEALED ORDER- 5

basis for the dispute, (4) the outcome of the dispute process, and (5) whether any issue remains." Dkt. # 40 at 12. It says that the Amended Complaint and attached exhibits purporting to detail the disputed invoices provide only the date and do not allege "the amounts at issue, the substance of the disputes, [] the outcomes for each invoice," or "why issues remain unresolved." *Id.* at 12–13 (citing Dkt. 45 ¶¶ 27–28). Second, Amazon argues that RL waived any claims related to the invoices listed in Exhibit D (Dkt. # 45, Ex. D at 69–73) because it submitted them after the 30-day timeline and because it did not pay the entire disputed amount to Amazon at first. *See id.* at 13–15.

RL responds with a host of arguments. First, it says that the Order does not require that it "allege the amount at issue for each dispute." Dkt. # 55 at 7. RL also says that the Order requires it only plead whether the dispute was resolved, or should have been resolved, in its favor. *Id.* at 7–8. And RL says that the "amount of each dispute is irrelevant to RL's breach of contract claim at the pleading stage," *id.* at 8, because RL, in the FAC, expressly alleged compliance with the Agreement's de minimis provision, which excludes invoices under a certain dollar value threshold (the greater of either $1,000 or 3.0% of the total weekly invoice amount). *Id.* (citing Dkt. # 45 ¶¶ 25–26). Second, RL admits that the invoices listed in Exhibit D were submitted after 30 days but says that Amazon waived the dispute process because it "repeatedly instructed RL to refrain from submitting disputes." *Id.* at 9 (citing Dkt. # 45 ¶¶ 29–31). RL says that the fact that it submitted some disputes but not others during the same period does not show any internal inconsistency and cannot show the waiver to which Amazon points. *Id.* at 12. Third, RL disputes Amazon's interpretation of the Agreement, saying that it was not required to pay the disputed amount of the invoices in full. *Id.* at 13–14.

a.    RL's curing of identified pleading deficiencies

The Court turns to Amazon's first contention: that the Order requires RL to allege the five elements referenced above, and that it failed to do so for the identified invoices in the FAC.

Amazon overstates the Court's determinations in its Order, which does not require that RL allege those five elements to plead a viable breach of contract claim. Granted, the Order does note that "[t]he complaint does not specifically allege the disputes resolved in RL's favor or the uncompensated amount at issue." Dkt. # 34 at 6. But the Order turns on the issue of resolution: "Because it is unclear from these allegations [in the first complaint] which disputed invoices were resolved in RL's favor, RL does not adequately allege breach." *Id.* And in determining that initial complaint did state a claim for the January 2021 invoice, the Court noted that it likely exceeded the de minimis threshold for bringing disputes at all under the Agreement because Amazon did ultimately approve a credit on the invoice.[4] *See* Dkt. # 34 at 7. Because the Order turned on the broader issue of resolution, RL need only have alleged whether the disputed invoices were resolved, and not the uncompensated amount of each disputed invoice.

Other reasons support this conclusion. First, the uncompensated amount would go to the damages issue. In a complaint for a breach of contract, there is no requirement that "a plaintiff plead a specific amount of damages." *AirDoctor, LLC v. Ziamen Qichuang Trade Co., Ltd.*, 134 F.4th 552, 556 (9th Cir. 2025) (Berzon, J., concurring). "Pleading for an unspecified, appropriate amount, as found by a judge or jury," is acceptable, *id.*, as RL did. *See* Dkt. # 45 ¶ 58 ("As a proximate cause of Amazon's breaches of contract, RL has suffered damages, according to proof at trial."). Second, RL alleges in the FAC that Amazon's pricing system

_____

[4] The de minimis threshold in the dispute resolution provision states that a disputed invoice "less than the greater of (a) three percent (3%) of the applicable invoice or (b) one thousand USD ($1,000.00) . . . is de minimis and will not be the basis for a dispute." Dkt. # 45, Ex. A at 29.

SEALED ORDER- 7

"made it impossible for RL to accurately identify the disputed amounts for each" disputed invoice. *Id.* ¶ 23. RL also alleges that Amazon "failed to identify which invoices or disputes" that the credits it awarded RL after resolving disputes in its favor "applied to, thus preventing RL from reconciling its disputes with any credits received." *Id.* ¶ 28. At the motion to dismiss stage, the Court must "draw all reasonable inferences in favor of" the plaintiff. *See Newcal Indus., Inc. v. Ikon Off. Sols.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). And perhaps the facts about how these disputes are resolved are known only to Amazon. *See Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (courts "relax pleading requirements where the relevant facts are known only to the defendant.").[5] Thus, accepting RL's allegations as true and drawing favorable inferences, RL may simply have been unable to determine (a) which specific invoices were resolved to its satisfaction, and (b) how much money it was still owed on those invoices (and the invoices for which it believes Amazon should have ruled in its favor).

Thus, to state a claim, RL need only allege, for each disputed invoice, whether (1) it was resolved in RL's favor, and (2) whether it exceeded the Agreement's de minimis threshold. Turning to the FAC, RL pleaded that each invoice exceeded the de minimis threshold. *See* Dkt. # 45 ¶ 25 ("**Exhibit C** is a list of disputes that RL submitted to Amazon within the 30-day dispute timeline. Said list excludes any disputes less than [the de minimis threshold]."); *id.* ¶ 26 ("**Exhibit D** is a list of disputes that RL submitted after the 30-day dispute timeline, along with the reasons for the delays. Said list excludes any disputes less than [the de minimis threshold].")

The main issue is therefore the first one: whether RL made clear "which disputed invoices were resolved in RL's favor." Dkt. # 34 at 6. To be sure, RL alleges in its FAC that

---

[5] This holding arises from the fraud context. But because fraud pleading standards are generally higher than for other civil claims, *see generally* Federal Rule of Civil Procedure 9, it appears this rule should apply to the less stringent context here.

each disputed invoice in its two lists was either resolved in its favor "or should have" been resolved in its favor. Dkt. # 45 ¶ 27. RL also alleges that, for those disputes resolved in its favor, Amazon apparently "provided some credits to RL" but that "said credits did not compensate RL for the full amount properly payable to RL pursuant to the valid disputes by RL." *Id.* ¶ 28. The quoted allegation (*id.* ¶ 28) that the credits did not compensate RL means that the associated disputed invoices were still unresolved from RL's perspective. And as explained above, RL may not have been able to ascertain which specific invoices were credited (or not) and the specific amounts involved.

On reply, Amazon says only that RL "does not—with the exception of the January 2021 invoice—explain why or how Amazon's dispute resolution process fell short." Dkt. # 51 at 7. But the Order does not require RL to explain how or why the dispute resolution fell short. As explained above, it requires only that RL allege that each dispute exceeded the de minimis threshold and whether each disputed invoice was resolved in its favor. And RL has convincingly explained that it could not determine with specificity whether each disputed invoice was resolved in its favor and to what specific amount: It could only determine that it had been insufficiently compensated by what resolution Amazon provided.

  b.  RL's compliance with the Agreement

Amazon next contends that the breach of contract claim cannot proceed because RL did not comply with the Agreement's dispute resolution procedures. It says that RL submitted many invoices after the 30-day timeline (contained in Exhibit D to the FAC) and that RL "admits that it did not pay the full invoiced amounts before disputing" all the invoices listed in Exhibits C and D to the FAC. Dkt. # 40 at 14–15. RL responds that Amazon waived the timeline requirement by instructing RL to submit disputes after the 30-day timeline. *See* Dkt. # 55 at 9–11.

The FAC alleges that Amazon instructed RL not to submit the disputes within the 30-day timeline. *See* Dkt. # 45 ¶¶ 29–33. The associated invoices are listed in Exhibit D to the FAC. Dkt. # 45, Ex. D at 69–73. RL claims these instructions amount to waiver, *see* Dkt. # 55 at 9–11, while Amazon contends that RL caused the delay and that RL fails to allege "facts showing that any waiver was effective," Dkt. # 51 at 8. Amazon says that RL "*itself* did not understand there to have been a waiver" because it submitted some disputes but not others during the period Amazon "supposedly instructed [it] not to submit disputes." *Id.*

The Court agrees with RL that Amazon's alleged actions support a conclusion of waiver in this context. "A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wash. 2d 94, 106, 297 P.3d 677 (2013) (citation omitted). RL's analogy to waiver in the arbitration context is well-taken considering the dispute resolution provision at issue. In that scenario, waiver requires "(1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that existing right, and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Schuster v. Prestige Senior Mgmt., LLC*, 193 Wash. App. 616, 633, 376 P.3d 412 (2016) (citing *Brown v. Dillard's*, 430 F.3d 1004, 1012 (9th Cir. 2005)).

RL alleges that in November 2023 Amazon changed its mind and agreed to provide a credit reflecting the actual value of the disputed invoices, at which point RL submitted them to Amazon. Dkt. # 45 ¶ 32. These are the disputed invoices—all dated between

January and June 2023 and submitted after the 30-day period—that Amazon says are untimely. In essence, Amazon asks the Court to dismiss claims that it says were submitted late after it allegedly told RL to submit those claims late. And RL would be prejudiced by following the direction to pause submission of disputed invoices and then being held to the timeline.

On reply, Amazon tries to downplay the allegations by saying that "an Amazon employee purportedly authorized late submissions" and that RL "alleges no facts showing that any waiver was effective." Dkt. # 51 at 8. But where "a corporation's agents act within the scope of their authority, their actions are the actions of the corporation." *Glogowski L. Firm, PLLC v. City First Mortg. Servs., LLC*, 197 Wash. App. 1061, 2017 WL 478305, at *4 (2017) (unpublished opinion) (citing *Mauch v. Kizzling*, 56 Wash. App. 312, 316, 783 P.2d 601 (1989)).

Next, Amazon says that RL's position is inconsistent because it continued to submit some disputed invoices while Amazon had instructed it not to submit them, Dkt. # 51 at 8–9, but the allegations must be viewed in the light most favorable to RL, and this may underscore RL's point that Amazon was unclear about strict compliance with the deadline. The Court agrees with RL that the remaining disputed invoices listed in Exhibit D are also not barred by the timeline. *See* Dkt. # 55 at 10–11.

Finally, Amazon argues that RL violated the dispute provision because it did not pay the full amount of the disputed invoice before submitting the dispute. Dkt. # 40 at 15–16. RL says that the Court already addressed this point in the prior Order, concluding that the Agreement and the Guide permitted RL to pay disputed invoice "less the disputed amounts." Dkt. # 13 (citing Dkt. # 34 at 7–8). The Court agrees with RL that this point was addressed in the Order.

Thus, the Court concludes that RL's FAC states a breach of contract claim for the disputed invoices listed in Exhibits C and D to the FAC.

SEALED ORDER- 11

B.      Breach of Implied Duty of Good Faith and Fair Dealing

RL contends that Amazon breached the implied duty of good faith and fair dealing in two ways.[6]  First, it says that Amazon failed to resolve disputes in RL's favor when it should have, primarily after Amazon made pricing errors on invoices, included items on manifests but did not load those items onto trucks, and charged RL for loads never received.  Dkt. # 55 at 15.  Second, RL says that Amazon's "practice of simply loading and locking up hazardous materials onto RL's trucks made it impossible for RL to perform its obligations under the Agreement." *Id.* at 16.

1.      Good faith and fair dealing standard and the Court's prior ruling

"Under Washington law, '[t]here is in every contract an implied duty of good faith and fair dealing' that 'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'"  *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wash. 2d 102, 112, 323 P.3d 1036 (2014) (citation omitted).  This duty does not "add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties." *Id.* at 113.  Rather, "it applies to the performance of specific contract obligations.  If there is no contractual duty, there is nothing that must be performed in good faith." *Johnson v. Yousoofian*, 84 Wash. App. 755, 762, 930 P.2d 921 (1996).

In the Order, the Court concluded that RL had not stated a claim for breach of the implied duty of good faith and fair dealing on its two theories.  Dkt. # 34 at 9–11.  As to pricing and load issues, the Court reasoned that RL waived pricing claims not submitted through the dispute

---

[6] In its FAC, RL alleges that Amazon violated its implied duty of good faith and fair dealing in five ways.  Dkt. # 45 ¶¶ 72, 73.  But in its response brief, RL discusses only Amazon's dispute resolution provision (focusing on pricing issues and the inaccurate manifests) and its loading of hazardous goods. Dkt. # 45 at 14–16.  Thus, just as it did in its prior Order, the Court addresses only these allegations. *See* Dkt. # 34 at 9 n.6.

mechanism. *Id.* at 9. As to the hazardous and illegal materials claim, the Court ruled that RL had not alleged that Amazon had unfairly adjudicated any disputes related to RL's receipt of hazardous or illegal materials, nor had it alleged that Amazon unfairly interpreted the Agreement in adjudicating those disputes. *Id.* at 11.

2. Analysis

Amazon contends that RL "has not identified any contractual duty that Amazon failed to perform in good faith" and that RL's contentions "would all improperly add to or modify the Agreement's clear terms." Dkt. 40 at 15. As to pricing, Amazon repeats the defense that RL can only contest pricing issues through the dispute resolution mechanism, the same basis on which the Court dismissed the claim in the prior order. *Id.* at 16. And Amazon says that the FAC's allegations about hazardous or illegal materials are recycled from the original complaint and should be dismissed for the same reasons in the Order. *Id.* at 15; Dkt. # 51 at 11.

a. Pricing and load issues

In Section 2.1 of the Agreement, Amazon promised that it would set the price of the liquidated merchandise at either a price that the parties agreed to or "a percentage of Amazon's cost of goods sold ("**COGS**") . . . as specified and agreed by the parties in the applicable Rate Schedule." Dkt. # 45, Ex. A at 29. RL alleges that Amazon did not use "a percentage of Amazon's cost of goods sold" but "some estimated cost (above Amazon's true cost of goods sold) calculated through an algorithm or formula." Dkt. # 45 ¶ 16; *see also id.* ¶ 34–35, 72. The incorporated Guide lists "Pricing Error: Overcharge for an item due to a data error" under the heading "Accepted dispute reasons." Dkt. # 45, Ex. B at 36. The FAC alleges that RL disputed invoices, some of which were not resolved to RL's favor, based on the "pricing errors, [] items on the manifests not being included in the associated truckloads picked up by RL; or [] Amazon charging RL for loads that RL never picked up." Dkt. # 45 ¶ 27. It is (1) this departure from the

SEALED ORDER- 13

COGS pricing (to what may be called "formulaic pricing") and (2) Amazon's failure to resolve disputed invoices, allegedly because it used formulaic pricing (in addition to its failure to resolve disputed invoices based on load issues) that forms one of the two bases of RL's breach of implied duty of good faith and fair dealing claim.

The FAC states a claim for breach of the implied duty. If RL were bringing a pricing claim alone, then its claim would be waived with respect to any invoices not already submitted to the dispute process, as this Court held in its prior Order. *See* Dkt. # 34 at 5–6. But the FAC alleges that RL did bring pricing issues to the dispute process, and that Amazon refused to resolve the associated invoices in RL's favor. In other words, Amazon promised to charge RL COGS pricing for liquidated merchandise, and promised that if it did not do so, RL could dispute the associated invoices—but when Amazon charged formulaic pricing for liquidated merchandise, and RL disputed the associate invoices, it either did not resolve the dispute or, as detailed above, resolved it but undercompensated RL. Because such alleged conduct prevented RL from receiving the full benefit of Amazon's performance, RL states a claim for breach of the implied duty of good faith and fair dealing.

The same logic applies to the load claims—that there were items on manifests that RL did not receive from Amazon and that Amazon charged RL for loads that RL never picked up. Dkt. # 45 ¶¶ 24, 27. In Sections 1.1 and 1.2 of the Agreement, Amazon promised to sell certain liquidated merchandise to RL, who promised to pay certain rates. *See id.*, Ex. A at 27. It also promised that if it charged RL for missing items (by either including them on manifests but not loading them onto trucks or charging RL for loads it did not receive), RL could dispute these invoices through the dispute process outlined in Section 2.4 of the Agreement. *See id.*, Ex. A at 29. The Guide states that "Incorrect Liquidator Charged" can be a basis for the dispute. *Id.*, Ex. B at 58. When RL did submit such disputes, Amazon allegedly failed to resolve them in RL's

SEALED ORDER- 14

favor. *Id.* ¶ 27. In other words, following this Court's guidance in its prior Order, for both pricing and load issues, RL has essentially pleaded that Amazon "unfairly adjudicate[ed] disputes raised in the dispute process." Dkt. # 34 at 10 (citation omitted).

Amazon says that RL's breach of implied duty claim repackages its breach of contract claim and argues in its reply brief that this negates the former. Amazon points to *Edifecs Inc. v. TIBCO Software Inc.* for the proposition that "conduct 'actionable as a breach of contract' 'does not give rise to a separate' good-faith-and-fair-dealing claim." Dkt. # 51 at 11 (citing 2011 WL 1045645, at *3 (W.D. Wash. Mar. 23, 2011)). It is not clear that this is the law in Washington. The *Edifecs* court cited a California case, *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 352, 8 P.3d 1089 (2000), for the proposition. Amazon cites no Washington authority for the same proposition, nor has the Court located any. Moreover, it is unclear that the conduct that RL says breached the implied duty would also be actionable as a breach of contract claim. While Amazon's charging of formulaic prices would contravene its promise in Section 2.4 to either fix prices with RL or charge COGS prices (thus giving rise to a breach of contract claim), the complained-of conduct is not the formulaic pricing alone, but that Amazon failed to resolve RL's valid disputes that arose from Amazon's use of formulaic pricing. In the words of this Court's prior Order, RL pleaded that Amazon "unfairly adjudicate[ed] disputes raised in the dispute process," which supports a claim for breach of the implied duty. Dkt. # 34 at 10 (citation omitted).

### b. Hazardous and illegal materials

RL still has not stated a breach of implied duty claim for the hazardous and illegal materials. *See* Dkt. # 45 ¶¶ 57, 73, 93. RL does not point to an applicable contract term. The Guide does state that "Loads meant for other dispositions (Eg. Disposal) incorrectly routed to liquidation" can be an "Accepted dispute reason," Dkt. # 45, Ex. B at 58, but the FAC does not

SEALED ORDER- 15

allege that RL ever disputed invoices on this ground.  Amazon convincingly points to Section 4(d) of the Agreement, through which RL promised to "obtain and maintainall [*sic*] necessary licenses and permits for the performance of its obligations" to buy liquidated merchandise.  Dkt. # 45 at 30–31.  Without any applicable contractual term, RL's argument seeks to "expand the existing duty of good faith to create obligations on [Amazon] in addition to those contained in the contract."  *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 571, 807 P.32d 356 (1991).  "The duty to cooperate exists only in relation to performance of a specific contract term," *id.*, and RL points to no such term.

C.      Washington Consumer Protection Act

RL's WCPA claim essentially combines allegations from its claims for breach of contract and breach of implied duty.  RL contends that Amazon violated the WCPA in the same manner by which it breached the Agreement (charging inflated prices, sending invoices for items that RL did not receive, and refusing to compensate RL for overcharges on disputed invoices).  Dkt. # 45 ¶ 76.  RL also repackages a claim from its breach of implied duty argument, saying that Amazon violated the WCPA by "frequently load[ing] RL's trucks with an unreasonable amount hazardous waste and other illegal items in violation of California and other applicable law."  *Id.*  Finally, RL also adds three new theories: Amazon "deployed a burdensome and costly dispute system intended to discourage RL and other liquidators from submitting valid invoice disputes" and discouraged RL from using that system in its communications.  *Id*.

1.      WCPA standard and the Court's prior order

The WCPA requires a plaintiff to establish five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986).

To establish an "unfair or deceptive act or practice," a plaintiff need not show that an action is both unfair and deceptive because the "'or' between 'unfair' and 'deceptive' is disjunctive." *Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 786, 295 P.3d 1179 (2013).  In other words, a plaintiff can show either or both to establish a WCPA violation.  To evaluate an "unfair act," the Washington Supreme Court allows plaintiffs to use the three-prong "substantial injury" test from the Federal Trade Commission Act of 1914, 15 U.S.C. § 45(n).  *Greenberg v. Amazon.com, Inc.*, 3 Wash.3d 434, 459, 553 P.3d 626 (2024).  Under that test, an act or practice is unfair when "(1) the act or practice causes or is likely to cause substantial injury to consumers; (2) which is not reasonably avoidable by consumers themselves; and (3) not outweighed by countervailing benefits to consumers or to competition." *Id*.  And "deception exists if there is a representation, omission or practice that is likely to mislead a reasonable consumer," which includes truthful statements if they create a "misleading net impression." *Eng v. Specialized Loan Servicing*, 20 Wash. App. 2d 435, 445–46, 500 P.3d 171 (2021) (citations omitted).  "Whether a particular act or practice is 'unfair or deceptive' is a question of law." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 47, 204 P.3d 885 (2009) (citing *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wash. 2d 133, 150, 930 P.2d 288 (1997)).

The Court determined in its prior order that RL had not stated a WCPA claim because it did not point to any specific unfair or deceptive act.  *See* Dkt. # 34 at 11–14.  As for an unfair act, it concluded that RL did not establish the second prong of the substantial injury test, because RL had notice of the pricing issues that could arise and it could receive hazardous waste or illegal goods.  *Id.* at 12.  But the Court left open the possibility that RL could amend its complaint to show that it did not have notice of either the burdensomeness of Amazon's dispute processing system or the contributing factors to that burdensomeness—the widespread underlying pricing issues.  *Id.* at 12–14.  The Court also determined that RL could not show a

deceptive act, since Amazon's alleged failure to disclose problems with its pricing system did not rise to the level of a "misleading net impression," and moreover, the Agreement's dispute resolution provision warned RL that there could be pricing problems. *Id.* at 14–15.

2.    Analysis

Addressing the unfair act element, Amazon argues that RL's claim fails at the first prong of the substantially injury test because the FAC insufficiently alleges substantial injury to consumers. Dkt. # 40 at 18. Amazon characterizes RL's allegations as a "private dispute" without "the potential to harm the public at large." *Id.* And Amazon argues that RL's claim fails at the second prong, since the Agreement disclosed the risk of pricing issues and problems with merchandise, making them avoidable. *See id.* at 17. Amazon makes no argument concerning the third prong. Amazon also argues that RL fails to allege deceptive conduct, *id.* at 18–19, and public interest impact, *id.* at 19–22, three other elements of the broader five-part test.

For the reasons below, the Court concludes that the FAC does not state a WCPA claim.

a.    Unfair or deceptive act or practice

*Unfair.* The first prong of the substantial injury test requires a WCPA plaintiff to plead that "the act or practice causes or is likely to cause substantial injury to consumers." *Greenberg*, 3 Wash.3d at 459. RL argues that its allegations show a substantial injury by monetary harm. Dkt. # 55 at 17 (citing Dkt. # 45 ¶¶ 20, 43, 47, 51, 57, 63). RL points to its allegations that other liquidators suffered the same harm (*id.* ¶¶ 36, 40–41) and that consumers are harmed "because some liquidators pass the inflated prices on to their customers" (*id.* ¶ 80) to assert that it satisfies the public-facing "to consumers" element. Dkt. # 55 at 19. To the test's second prong, RL points to its allegations in FAC that Amazon did not disclose "its use of an algorithm by which prices were calculated" above the COGS price, which makes that harm unavoidable. *Id.* (citing Dkt. # 45 ¶¶ 14, 16, 34; *see also id.* ¶¶ 35, 86). RL argues that this algorithm is the root of the

problem, based on its allegation that "the pricing issues as a whole were predicated on a nondisclosed and inaccurate algorithm system," Dkt. 55 at 16 (citing Dkt. # 45 ¶ 86).  According to RL, this failure to disclose the algorithm meant that RL was not "able to make an 'informed choice'" about whether to contract with Amazon.  Dkt. # 55 at 19 (citing *Greenberg*, 3 Wash.3d at 462).

While RL did allege that it suffered monetary harm, the issue is whether that harm was felt broadly enough to satisfy the "to consumers" element of the test.  *Greenberg*, 3 Wash.3d at 459.  Other courts in this District have interpreted the substantial injury test's first prong to require pleading that the harm was felt by other consumers, or at least more broadly than the plaintiff.  *See, e.g.*, *Kelley-Ross & Assocs., Inc. v. Express Scripts, Inc.*, 2022 WL 1908917, at *6 (W.D. Wash. June 3, 2022) (concluding that the plaintiff did not meet the first prong of the substantial injury test because it did "not allege any conduct that was directed at the public") (citation omitted); *Segal Co. (E. States) v. Amazon.Com*, 280 F. Supp. 2d 1229, 1232–33 (W.D. Wash. 2003) (concluding that the plaintiff did not show unfair or deceptive conduct because it did not allege that "defendant's conduct extended beyond the two parties to the alleged contract").  Because this inquiry overlaps with and is better addressed by the public interest impact analysis, discussed below, the Court assumes without deciding that RL's bare allegation that other liquidators have possibly suffered the same harm (*see, e.g.*, Dkt. # 45 ¶ 79) meets this standard.

The second prong of the test requires that a plaintiff allege that the harm was not reasonably avoidable.  "In determining whether consumers' injuries were reasonable avoidable, courts look to whether the consumers had a free and informed choice." *Greenberg*, 3 Wash.3d at 461 (citing *FTC v. Neovi*, 604 F.3d 1150, 1158 (9th Cir. 2010).  And an "injury is reasonably avoidable if consumers have reason to anticipate the impending harm and the means to avoid it,

SEALED ORDER- 19

or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." *Id.* (citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012)) (citation modified).

RL's contention that it could not exercise "an informed choice" about working with Amazon is based on its allegation that Amazon did not disclose the use of an algorithm to calculate prices (and thus, in RL's telling, make its widespread pricing errors).[7] *See* Dkt. # 55 at 17; *see also* Dkt. # 45 ¶¶ 85–86. But RL's own allegations show that it could have avoided harm associated with the use of the algorithm. RL alleges that Amazon told it of the algorithm in March 2022. Dkt. # 39 ¶ 36 (filed under seal). At this point, RL had submitted nearly two dozen disputes. *See generally* Dkt. # 45, Ex. C at 62 (listing disputes submitted before March 2022). Despite being aware of the algorithm and the extent of the pricing problems, RL chose to reenter into the Agreement on November 8, 2022. Dkt. # 45 ¶ 11. RL's own allegations suggest that RL exercised an informed choice *not* to avoid the allegedly burdensome dispute resolution mechanism.

*Deceptive.* Nor do RL's allegations show that Amazon engaged in a deceptive act or practice. Although "the [WCPA] does not define the term 'deceptive,' the implicit understanding is that the actor misrepresented something of material importance." *Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 931 (W.D. Wash. 2024) (citation modified). A deceptive misrepresentation may arise when "[e]ven a truthful statement . . . creates a misleading

---

[7] To be clear, RL's argument in its response brief is not that the widespread pricing problems themselves were unavoidable, since they could be avoided through the dispute process: It is that these widespread pricing problems arose from an algorithm, the consequence of which was unavoidable since Amazon did not disclose it. *See* Dkt. # 55 at 17 ("Due to Amazon's failure to disclose the algorithm, RL had no opportunity to provide informed consent, yet was made responsible for the resulting discrepancies . . . Although the dispute process attempted to deal with pricing issues, the pricing issues as a whole were predicated on a nondisclosed and inaccurate algorithm system.") (citing Dkt. # 45 ¶¶ 14, 16, 86).

SEALED ORDER- 20

'net impression.'" *Eng*, 20 Wash. App. at 446. And "[o]nly acts that have the capacity to deceive *a substantial portion* of the public are actionable." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash. App. 732, 744, 935 P.3d 628 (1997) (citing *Hangman Ridge*, 105 Wash.3d at 785).

The FAC alleges neither a misrepresentation nor a truthful statement creating a misleading net impression. In fact, the presence of the dispute mechanism suggests that Amazon was disclosing, at least to some extent, that it would have issues that would need to be resolved through the dispute mechanism.

RL's central allegation is that the use of the algorithm amounts to a deceptive act, because Amazon did not disclose its use. Dkt. # 45 ¶ 85. But two points undermine RL's argument: First, it is not clear that the use of formulaic or algorithmic pricing meaningfully departs from the Agreement such that its use would be a deceptive act. The Agreement's pricing term states that Amazon could charge RL "a percentage of Amazon's [COGS]." Dkt. # 45, Ex. A at 29. RL does not allege that the use of an algorithm is inconsistent with COGS pricing. RL's only basis for this claim is its allegation that the undisclosed algorithm led Amazon to "charge RL a percentage of some estimated cost (above Amazon's true cost of goods sold)." Dkt. # 45 ¶ 16. But this does not show deception, since Amazon's use of algorithmic pricing, even if true, could be "a percentage of Amazon's [COGS]" just the same. And Amazon never represented in the contract that its pricing would be fully accurate, and for that reason it provided for a dispute resolution process. Indeed, as the Court observed in its prior Order, RL has still not "meaningfully address[ed] the fact that the Agreement's provision for a dispute process anticipated pricing issues." Dkt. # 34 at 15.

Nor has RL alleged that Amazon's conduct "had the capacity to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wash. 3d at 785. "Typically, a breach of contract

SEALED ORDER- 21

against a single person does not constitute a Consumer Protection Act violation." *Teuscher v. CCB-NWB, LLC*, 2019 WL 5399504, at *2 (E.D. Wash. Oct. 22, 2019).  Here, RL has not alleged that the use of the algorithm deceived anyone other than itself and possibly other liquidators.  *See, e.g.*, Dkt. # 45 ¶ 96 ("Amazon failed to disclose to  RL and other liquidators Amazon's use of an algorithm to estimate the cost of goods sold").   Courts have held that conduct between two businesses who are parties to a contract, as here, "do[es] not have deceptive capacity affecting the public in general." *Kelley-Ross*, 2022 WL 1908917, at *6; *see also Goodyear Tire & Rubber Co.*, 86 Wash. App. at 744 (WCPA defendant's allegedly deceptive conduct to other businesses "had no deceptive capacity affecting the public in general"); *Segal Co.*, 280 F. Supp. 2d at 1232–33 (W.D. Wash. 2003) (plaintiff did not show deceptive conduct because it did not allege that "defendant's conduct extended beyond the two parties to the alleged contract").

          b.     Public interest impact

Assuming RL has adequately alleged and unfair or deceptive act or practice, the CPA claim still fails because RL has not adequately pleaded public interest impact.  To satisfy this element, a plaintiff must show that the challenged act either "[i]njured other persons" or had "the capacity to injure other persons."  RCW 19.86.093(3).

"Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. . . It is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *Hangman Ridge*, 105 Wash. 2d at 790–91 (emphasis added) (citations omitted).  A "plaintiff need not show that the act in question was intended to deceive, but that the alleged act had the capacity to deceive a *substantial portion* of the public." *Id.* at 785 (emphasis added) (citing *State v. Ralph Williams' N. W. Chrysler*

*Plymouth, Inc.*, 87 Wash. 2d 298, 553 P.2d 423 (1976), *appeal dismissed*, 430 U.S. 952 (1977)). Thus, a transaction that "essentially involves a private dispute" may mean that the party will have "more difficulty showing that the public has an interest in the subject matter." *Id.*

To be sure, RL makes several allegations in the FAC that Amazon's conduct effects consumers more broadly. For example, RL alleges that, "[u]pon information and belief, Amazon's practice of charging liquidators inflated prices for Liquidation Merchandise affects liquidators' downstream customers, because some liquidators pass the inflated prices on to their customers." Dkt. # 45 ¶ 80; *see also id.* ¶ 82 (same). RL also alleges that, upon information and belief, at least two other liquidators "have filed suit against Amazon based, in part, on Amazon charging the liquidators inflated prices for Liquidation Merchandise and charging the liquidators for Liquidation Merchandise not actually included in the loads." *Id.* ¶ 79.

RL's allegations of public impact are insufficient for two reasons. First, a plaintiff may plead "facts alleged upon information and belief . . . where the belief is based on factual information that makes the inferences of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted). But RL alleges no facts on which to make its allegations of downstream consumer harm, or harm to other liquidators, plausible. It does not make any allegations that show (rather than baldly assert) that liquidators have actually passed costs onto consumers. Second, and even setting aside the pleading issue, RL has not alleged that a substantial portion of the public or at least "additional plaintiffs have been or will be injured in *exactly the same fashion*" as RL. *Hangman Ridge*, 105 Wash.3d at 790–91 (emphasis added). Courts in this district have concluded that plaintiffs failed to show a public interest impact necessary to a WCPA claim on this basis, including when the plaintiff pleaded on information and belief, as here. *See, e.g.*, *Kelley-Ross*, 2022 WL 1908917, at *6 (dismissing WCPA claim because the plaintiff did "not allege that other people will be harmed *in the same fashion* as the

plaintiff); *Segal Co.*, 280 F. Supp. 2d at 1234 (business plaintiff's allegations upon "information and belief" insufficiently alleged public interest impact because it failed to allege "specific facts suggesting that [the] defendant has engaged in a generalized pattern of" harmful conduct).

D.   UCL

RL alleges Amazon violated California's UCL when it "loaded truck trailers with hazardous waste and other illegal items for RL's collection." Dkt. # 45 ¶ 93. For the reasons below, the Court concludes that RL has failed to state a claim under the UCL.

1.   UCL standard and the Court's prior ruling

A plaintiff stating a UCL claim must allege "an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Servs. Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (citing Cal. Bus. & Prof. Code § 17200).

In the prior Order, the Court held that RL could not sustain a UCL claim because it had neither stated a WCPA claim nor specified other statutes to support a UCL claim. Dkt. # 34 at 15. In response, RL has listed in the FAC upwards of 20 sections of California's civil code. *See* Dkt. # 45 ¶ 94.

2.   Analysis

Amazon makes four arguments. First, it says that RL's allegations do not show unlawful conduct, pointing out that the FAC cites California statutes without applying them to the conduct at issue. Dkt. # 40 at 22–23. Amazon also says that the FAC does not show unfair or fraudulent conduct for the same reasons its WCPA claim fails, that RL cannot show a nexus between Amazon's conduct and RL's presence in California, and that RL did not allege the absence of a suitable remedy at law, also a necessity for a UCL claim. *Id.* 23–24. Because the only argument RL makes in its response brief is that Amazon's alleged loading of hazardous waste and illegal

SEALED ORDER- 24

items was "unlawful" (but not unfair or fraudulent) under the UCL, *see* Dkt. # 55 at 21, the Court addresses only this issue.

The Court agrees with Amazon that RL lacks standing to bring a UCL claim because the FAC fails to allege the absence of a remedy at law. To state a claim under the UCL, a plaintiff must establish they lack an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see, e.g.*, *McDowell v. Penske Truck Leasing Co.*, 2024 WL 1354261, at *3 (C.D. Cal. Mar. 29, 2024) (dismissing UCL claim because plaintiffs did not allege a lack of suitable remedy at law).

Here, regarding the UCL claim, the FAC does not allege that RL lacks an adequate remedy at law. RL states in the FAC that it "lost money or property." Dkt. # 45 ¶ 101. While RL asks the Court to "enter appropriate and just relief, including injunctive relief," it asks the Court to "restore RL's money or property that was lost by means of Amazon's unlawful" conduct.[8] *Id.* ¶ 102. These are admissions that RL possesses an adequate remedy at law: money damages.[9] RL does not provide any detail on what injunctive relief it seeks and makes no arguments that sound in equity. And RL bases its UCL claim on the same conduct for which it seeks money damages in its breach of implied duty claim: the loading of hazardous and illegal materials. *See* Dkt. # 45 ¶¶ 73–74 (alleging that "as a proximate cause of Amazon's" loading of hazardous waste and illegal items, RL "suffered damages"). This suggests that RL does not lack a remedy at law for either its breach of implied duty or its UCL claim. *See Price v. Apple, Inc.*,

---

[8] RL mentions "property" here, but does not allege that it lost any property in the FAC.

SEALED ORDER- 25

2022 WL 1032472, at *7 (N.D. Cal. Apr. 6, 2022) (dismissing UCL claim because plaintiff sought damages "for the exact same conduct that forms the basis of his [UCL] claim[]," thus possessing an adequate remedy at law).

## IV

### CONCLUSION

For these reasons, the Court GRANTS in part and DENIES in part Amazon's motion to dismiss. Dkt. # 40.  The Court DENIES the motion with respect to RL's breach of contract claim and its breach of implied duty claim for pricing and loading issues.  The Court GRANTS the motion with respect to the rest of RL's claims: the breach of implied duty claim concerning hazardous materials is DISMISSED with prejudice, and the Court finds amendment would be futile; the remaining claims are DISMISSED without prejudice.

The Court provisionally files this Order under seal.  The Court DIRECTS the parties to file a statement, on or before March 5, 2026, indicating what redactions, if any, should be included in the public version of the Order.  If RL does not participate in the statement because it does not have counsel, the Court may make additional redactions, based on previous filings, that it deems appropriate.

Dated this 19th day of February, 2026.

John H. Chun
United States District Judge

SEALED ORDER- 26